IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JH

NIAESHIA PAIGE, et al.,          )
                                 )
                Plaintiffs,      )
                                 )
        v.                       )    No. 03 C 3147
                                 )
DAWN H. HINES, et al.,           )
                                 )
                Defendants.      )

## MEMORANDUM OPINION AND ORDER

In the Second Amended Complaint ("SAC"), four female
plaintiffs allege that, while detainees, they were subjected to
repeated sexual assaults by two male Correctional Officers at the
Illinois Youth Center-Chicago ("IYCC"), a minimum security
facility of the Juvenile Division of the Illinois Department of
Corrections ("IDOC"). Plaintiffs allege that IYCC and another
juvenile facility, Illinois Youth Center-Warrenville ("IYCW"),
had "brothel-like environments" in which plaintiffs and other
teenage girls at the facilities were required to engage in sexual
relations with various Corrections Department personnel. The
particular assaults raised in the SAC allegedly occurred from
June 1, 2001 to September 8, 2001 at IYCC, SAC ¶ 160, and were

perpetrated by defendant Correctional Officers Frederick Funches and Teeley Rhyne.[1] Other than Funches and Rhyne, all defendants who have been served have moved to dismiss the SAC.[2]

Including Funches and Rhyne, 42 defendants are named in the SAC. The other 40 can be grouped as follows.[3] Four defendants are IDOC administrators: Director Donald Snyder;* Deputy Directors Rodney Ahitow*[4] and George DeTella;* and Director of Staff Development Anthony Scillia. Ten defendants are administrators or supervisors at IYCC: Wardens Calvin Drew and Dawn Hines;*[5] Assistant Wardens Lynn Avery,* Francis

---

[1]Although spelled "Rhine" in the caption of the SAC and in some places in the body of the SAC, the correct spelling apparently is "Rhyne."

[2]To the extent any argument raised by the moving defendants applies equally to a defendant who has not joined in the motion, the argument will be considered as to all applicable defendants. It is noted that neither side's brief was particularly helpful in resolving the pending motion. Despite the length of the SAC and the large number of parties involved, neither side is very specific in its arguments nor does either side cite to specific paragraphs of the SAC to support any factual contentions. Also, the cases cited by the two sides generally are not on point and the parties fail to recognize a number of pertinent legal issues.

[3]The defendants with asterisks next to their names are the defendants who have been served or waived service and have joined in the motion to dismiss.

[4]In the SAC, Ahitow is misnamed Andrew Ahitaw.

[5]Drew allegedly was the Warden from January 1, 2000 to August 2001 and Hines from August 2001 to the present. There is no allegation as to any prior position that Hines had within IYCC or IDOC.

- 2 -

Bishop,*[6] Robert Catching,* Vicky Fredericks,* Michael Fury, and James Kelly;* Chief of Security Earl Merritt;* and Major Orlando Allen.* Not including Funches and Rhyne, 19 IYCC Correctional Officers are named as defendants: Armstrong,[7] David Barnat,* Sandra Binion,* Tyeme Bradley,* Daryl Clayton, Allie Cooper, Hector Delapaz, Wayne Golden, Darryl Hatfield, Shontel Hemphill,* Donald Hicks, Melanie Green Jernigan, Gana Johnson ("G. Johnson"),* Larry Johnson ("L. Johnson"), Lucky,[8] Samuel Nicholson,* Tasha Sanders, Anthony Turner, and Charles Watson. Five defendants are IYCW administrators: Wardens Glenda Blackmore* and Janice Shallcross;*[9] and Assistant Wardens Sherwood Harford, Wendolyn Simms, and Eugene Vengone.* Also named as defendants are Joliet Correctional Center Warden James Chrans and Illinois Youth Center-St. Charles ("IYCSC") Warden Jerry Butler.* All defendants are sued in their individual and official capacities.

The SAC is denominated as having six counts. Count I is labeled as an Eighth Amendment sexual assault claim against

---

[6]Bishop is alleged to be "a" Warden. SAC ¶ 23. It is assumed that IYCC had only one Warden at a time and that the word assistant was mistakenly omitted from this allegation.

[7]Armstrong's first name is not alleged.

[8]Lucky's first name is not alleged.

[9]Blackmore is alleged to have been Warden from 1998 through May 15, 1999 and Shallcross from May 16, 1999 through July 31, 2001.

- 3 -

Funches and Rhyne. Count II is labeled as an Eighth Amendment cruel and unusual punishment claim against all defendants. Count III is labeled as an Eighth Amendment failure to protect claim against all defendants. Count IV is labeled as an Eighth Amendment failure to intervene claim. Count IV is against 14 of the IYCC Correctional Officers: Binion, Bradley, Clayton, Cooper, Delapaz, Golden, Hemphill, Jernigan, G. Johnson, L. Johnson, Lucky, Sanders, Turner, and Watson. Count V is labeled as a "violation of Eighth Amendment liability of supervisors deliberate indifference" claim. Count V is against all the administrator and supervisor defendants at all the facilities. Count VI is labeled as a "violation of Eighth Amendment liability of supervisors failure to train." Count VI is against all the administrator and supervisor defendants at all the facilities.

On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic

Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002);

Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert.

denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d

950, 951 (7th Cir. 1999). A plaintiff in a suit in federal court

need not plead facts; conclusions may be pleaded as long as the

defendants have at least minimal notice of the claim. Fed. R.

Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512

(2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee,

122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County,

66 F.3d 151, 153-54 (7th Cir. 1995). Even if not required to

plead specific facts, a plaintiff can plead herself out of court

by alleging facts showing there is no viable claim. See

Slaney v. The International Amateur Athletic Federation, 244 F.3d

580, 597 (7th Cir.), cert. denied, 534 U.S. 828 (2001); Kauthar

SDN BHD v. Sternberg, 149 F.3d 659, 669-70 n.14 (7th Cir. 1998),

cert. denied, 525 U.S. 1114 (1999); Jackson, 66 F.3d at 153-54.

Although the statute of limitations is an affirmative defense

that ordinarily cannot be raised on a motion to dismiss, it can

be resolved on a motion to dismiss if the necessary facts are

properly before the court. See Alvarado v. Litscher, 267 F.3d

648, 651-52 (7th Cir. 2001); Jackson, 66 F.3d at 153-54;

Tregenza v. Great American Communications Co., 12 F.3d 717,

718 (7th Cir. 1993), cert. denied, 511 U.S. 1085 (1994); Early v.

Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992).

Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). A plaintiff is not bound by legal characterizations of the claims contained in the complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Plaintiffs allege that, prior to the opening of IYCC in 1999, teenage girls in IDOC custody were sent to IYCW. Plaintiffs allege that male staff at IYCW routinely sexually

- 6 -

assaulted the girls in custody, disregarding rules and procedures about fraternizing with the girls. Allegedly, most, if not all, staff members, including supervisors and administrators, were aware of these violations. The girls were also aware of this practice and that supervisors would do nothing to stop the assaults. Instead, supervisors allegedly punished victims of the sexual assaults, including for reporting assaults. Also, no training was provided to prevent further assaults. This allegedly created a brothel-like environment at IYCW.

When IYCC opened in 1999, many girls were transferred there from IYCW. Allegedly, these girls arrived expecting the same treatment as at IYCW. The same brothel-like environment developed at IYCC. Both Correctional Officers and supervisory staff ignored the violations that were occurring. Also, IYCC transferred in IDOC personnel from the maximum security prison at Stateville without providing any additional training regarding supervising teenage girls. Two of the Correctional Officers transferred from Stateville were Funches and Rhyne.

It is alleged that the IDOC administrators and the administrative and supervisory personnel at IYCC and IYCW had a duty to train and supervise the correctional staff. It is also alleged that these defendants took no effective action to properly train or supervise Correctional Officers regarding not

engaging in and preventing sexual assaults. It is alleged that, since February 1998, IYCW had a written policy regarding sexual assaults, but that it was vague and did not specifically refer to sexual assaults by employees. The policy contained no specific provisions and no related training was provided prior to the 2001 assaults at issue in this lawsuit. IYCC did not have an employee handbook until June 2003 and a youth handbook was first promulgated in January 2005. It is also alleged that an Administrative Officer Orientation Manual was developed for training supervisory personnel at IYCC. There is no allegation as to when this Manual was first promulgated, but it is alleged that it contained no mention of sexual activity.

Although it is alleged that the IYCC Employee Handbook was not promulgated until after the incidents that are the subject of the SAC, plaintiffs allege that Funches and Rhyne violated provisions in that Handbook. Since contradictions in a complaint should be resolved in the plaintiff's favor, it will be taken as true that the rules alleged existed prior to June 2001. Plaintiffs allege the violation of a number of rules, that most of the IYCC Correctional Officer defendants were aware of the violations, and that those defendants failed to report the violations. Violations that occurred included Funches and Rhyne providing contraband food to girl detainees, being alone with

girl detainees, and using improper language.[10]  Defendant Sanders

was aware that Rhyne had used corporal punishment on a girl.

IYCC Correctional Officers were also aware that girl detainees

had danced nude in front of defendant Turner, video surveillance

in the girl's area was often broken or not being watched, and

that security features on dorm rooms of girls malfunctioned.

Defendants Armstrong, Barnat, Cooper, Hatfield, Hicks, Lucky, and

Nicholson allegedly sexually assaulted detainees other than

plaintiffs and most of the Correctional Officer defendants are

alleged to have been aware of these assaults.[11]  As to all the

IYCC Administrators/Supervisors except Allen, it is alleged that

they knew Funches placed money in the commissary accounts of girl

detainees.  Of course, such allegations in the narrative portion

of the SAC do not support that defendants would have knowledge

that the plaintiffs in this case were at risk of being or

actually had been assaulted by Funches or Rhyne.  In the

paragraphs reciting specific counts, however, it is alleged in

Count IV (¶ 194) that all the IYCC Correctional Officer

defendants (except Armstrong, Barnat, Hatfield, Hicks, and

---

[10]As to Turner only, it is also alleged that Funches
specifically told him that Funches intended to sexually assault a
detainee.

[11]As to Armstrong, Barnat, Hatfield, Hicks, and
Nicholson, it is only alleged that they engaged in the sexual
assaults and were aware Funches and Rhyne provided girls with
contraband food.  The other Correctional Officer defendants are
alleged to have been aware of all the other infractions.

- 9 -

Nicholson) knew[12] that Funches and Rhyne were about to sexually assault plaintiffs. In Count V (¶ 200), it is alleged that all the administrator/supervisory defendants had knowledge that Funches and Rhyne had a practice of sexually assaulting teen girls placed in the custody of IDOC. With the exception of Hines, there is no allegation as to when the defendants first became aware of Funches's and Rhyne's sexual assaults of detainees. With the exception of Hines, it will be assumed that, no later than June 1, 2001, defendants had the knowledge alleged in paragraphs 194 and 200.

As to Hines, it is alleged that she first learned of allegations regarding Funches's and Rhyne's sexual conduct on August 29, 2001. On that date, Hines received an anonymous report from a staff member (later determined to be defendant Binion) reporting a widespread practice of sexual assaults by staff. Funches and Rhyne were specifically named in the report. Prior to receiving the August 29 report,[13] Hines had heard of problems between girl detainees and male guards. Hines's response to that information was to warn the girls that they should not flirt with guards. The issue was not raised with any

---

[12]The actual allegation is that defendants "knew or should have known." For purposes of ruling on the motion to dismiss, the alternative more favorable to plaintiffs must be taken as true.

[13]It would not have been much earlier than August 29 since Hines did not begin as Warden until August 2001.

- 10 -

guards. On September 8, 2001, Hines received a letter from a girl detainee reporting sexual assaults.[14] On September 8, Funches and Rhyne each sexually assaulted one of the plaintiffs. In response to the August 29 report, Hines did not begin an investigation until September 17, 2001. On September 21, 2001, Funches and Rhyne were suspended and both were subsequently discharged.

Absent allegations of fraud or mistake covered by Fed. R. Civ. P. 9(b), no heightened pleading standard applies to civil rights allegations. Thomson v. Washington, 362 F.3d 969, 971 (7th Cir. 2004). A defendant's knowledge or condition of mind may be averred generally. Fed. R. Civ. P. 9(b); Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002); Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). Detailed facts and evidence need not be alleged to show that there was deliberate indifference. See Walker v. Benjamin, 293 F.3d 1030, 1039 (7th Cir. 2002). The existence of a custom or practice may be conclusorily alleged. Leatherman, 507 U.S. at 165-66; McCormick v. City of Chicago, 230 F.3d 319, 324-25 (7th Cir. 2000); Remus v. Sheahan, 2006 WL 418654 *7 (N.D. Ill. Feb 16, 2006). Plaintiffs have adequately alleged that at both IYCC and IYCW, a de facto policy of sexual assaults of girl detainees existed. It has also been adequately

---

[14]It is not specified whether the assaults involved this girl, other girls, or both.

alleged that certain IYCC Correctional Officers had knowledge that Funches and Rhyne were sexually assaulting the plaintiffs and that administrator/supervisory defendants had knowledge that Funches and Rhyne were sexually assaulting girl detainees.

First, it is clear that the official capacity claims must be dismissed. Plaintiffs, none of whom apparently are still in the custody of IYCC, seek damages relief only; they do not seek any prospective injunctive relief. As to those defendants who are currently employed by IDOC,[15] a suit against them in their official capacities is a suit against IDOC. Since IDOC is a state entity, it is a damages suit against the State of Illinois. Therefore, the Eleventh Amendment bars the official capacity claims. Knox v. McGinnis, 998 F.2d 1405, 1412 (7th Cir. 1993); Gutierrez, 111 F.3d at 1168 n.3; Brown v. Budz, 398 F.3d 904, 918 (7th Cir. 2005); Johnson v. Illinois Department of Corrections, 2006 WL 741318 *8 (S.D. Ill. March 22, 2006).

The moving defendants concede that the Count I allegations against Funches and Rhyne, the direct perpetrators of the sexual assaults, adequately state a constitutional violation.

_____

[15]As to those defendants no longer employed by IDOC, the official capacity claims would have no meaning or would be against a defendant's current principal, an entity having no relation to this case. Cf. Kmetz v. State Historical Society of Wisconsin, 300 F. Supp. 2d 780, 785-86 (W.D. Wis. 2003) (suit against former government official in his "former official capacity" is inconsistent with the nature of an official capacity claim and has no meaning).

- 12 -

See Walker v. Taylorville Correctional Center, 129 F.3d 410, 413-14 (7th Cir. 1997). They contend, however, that plaintiffs have not adequately alleged a basis for holding any other defendant liable. Defendants contend the allegations are too general and lacking in detail, and that personal involvement on the part of defendants is not adequately alleged. As previously discussed, plaintiffs have adequately alleged the existence of a policy or practice of sexual assault at IYCC and IYCW. Plaintiffs have also adequately alleged that certain Correctional Officer defendants knew Funches and Rhyne were assaulting plaintiffs and all the administrator/supervisor defendants knew Funches and Rhyne were sexually assaulting girl detainees.

Although plaintiffs have divided their claims against the non-perpetrators into five counts, they all fall under the rubric of a failure to protect claim.[16] To state such a claim,

---

[16]Plaintiffs characterize their claims as being for violations of the Eighth Amendment (which would be applied to state actors through the Fourteenth Amendment). Because plaintiffs were juvenile detainees, however, it may be that their claims should instead be characterized as Fourteenth Amendment due process claims. See A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 584 (3d Cir 2004); R.G. v. Koller, 415 F. Supp. 2d 1129, 1153 (D. Haw. 2006). But compare Beers-Capitol v. Whetzel, 256 F.3d 120, 125, 130 n.5 (3d Cir. 2001); Stevens v. Harper, 213 F.R.D. 358, 373-74 (E.D. Cal. 2002). Application of the Fourteenth Amendment would clearly be the proper source if, during the pertinent time period, a plaintiff had not yet been adjudicated a delinquent or convicted in a criminal proceeding. See Brown, 398 F.3d at 910; Bergren v. City of Milwaukee, 811 F.2d 1139, 1142 n.2 (7th Cir. 1987). It need not be decided whether plaintiffs' claims are Eighth Amendment cruel and unusual punishment claims or Fourteenth

- 13 -

plaintiffs must sufficiently allege regarding each plaintiff and defendant that (a) the plaintiff was held under conditions posing a substantial risk of serious harm and (b) the defendant acted with deliberate indifference to that risk. Brown, 398 F.3d at 909 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

To constitute serious harm, "the deprivation alleged must be objectively, sufficiently serious." Brown, 398 F.3d at 910 (quoting Farmer, 511 U.S. at 834). There is no question that being sexually assaulted meets that standard. Beers-Capitol v. Whetzel, 256 F.3d 120, 130 (3d Cir. 2001).

A substantial risk that the serious harm will occur has been variously described as a known propensity of one person to harm a particular individual or class of individuals; highly probable attacks; or a heightened risk of a plaintiff being assaulted. See Brown, 398 F.3d at 911. In other words, the risk may be represented by the perpetrator's propensities, the victim's characteristics or situation, or a combination of both. See id. at 911-13. Here, it is alleged that there was a pattern of sexual assaults by numerous IYCC Correctional Officers upon girl detainees. Specifically, it is alleged that Funches and Rhyne had such a propensity and that they had the opportunity to

Amendment due process claims because, for failure to protect claims, "there is 'little practical difference between the two standards.'" Brown, 398 F.3d at 910 (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)).

- 14 -

engage in such propensities with plaintiffs. That the particular facts of each attack are not alleged nor the exact frequency stated is not a basis for dismissing the SAC. No such particularized pleading is required. See id. at 912. Plaintiffs have adequately alleged the existence of a substantial risk of harm.

To be deliberately indifferent, defendants must have both known of the risk of assault and have disregarded it. As to particular IYCC Correctional Officers, it is alleged that they knew Funches and Rhyne were sexually assaulting plaintiffs. As to the administrators/supervisors, it is alleged that they knew Funches and Rhyne were sexually assaulting girl detainees. That is sufficient, it is not necessary that they know the plaintiffs were particularly targeted. Brown, 398 F.3d at 914-15. It is alleged that the Correctional Officer defendants could have intervened to prevent assaults, including that they could have reported to the appropriate personnel that Funches and Rhyne were engaging in such conduct. As to those Correctional Officers with knowledge of the assaults, it has been adequately alleged that they disregarded a known substantial risk. As to the administrators/supervisors, the disregard of risk element is satisfied by general allegations that defendants were responsible for training, supervising, or implementing pertinent policies, but failed to take adequate measures. Id. at 916. Except as

noted below, plaintiffs have adequately alleged that each defendant acted with deliberate indifference to a substantial risk that each plaintiff would be harmed.

As to certain defendants, the allegations are deficient, either because their knowledge has not been alleged or because plaintiffs have pleaded facts that would only support that the particular defendant cannot be held liable. As to Correctional Officers Armstrong, Barnat, Hatfield, Hicks, and Nicholson, there is no allegation that they knew Funches and Rhyne were sexually assaulting the plaintiffs. See SAC ¶ 194. It is not even alleged that they knew any sexual assaults were being committed by Correctional Officers except for the particular assaults in which each of them personally engaged. See id. ¶ 155. The only allegations against these defendants are that each sexually assaulted a girl detainee (other than one of the plaintiffs) at IYCC or IYCW, id. ¶¶ 151-52, and that they knew Funches, Rhyne, and Turner provided girls with contraband food from outside IYCC. Knowledge that Funches and Rhyne provided girls food is not knowledge that Funches and Rhyne were likely to sexually assault the girls. Nor is each defendant's knowledge of his own sexual misconduct knowledge that Funches and Rhyne were also engaging in such conduct. The allegations do not support that Armstrong, Barnat, Hatfield, Hicks, and Nicholson were deliberately indifferent to the substantial risks of harm faced by plaintiffs.

- 16 -

The claims against these five Correctional Officers will be dismissed.

For present purposes, the allegations of the SAC must be accepted that all the IYCC and IDOC administrators/supervisors had responsibility for training or other policies that affected Funches, Rhyne, and plaintiffs, or had supervisory authority that they failed to properly exercise despite knowing of Funches's and Rhyne's misconduct. As to Hines, however, additional facts are alleged that must be considered. Hines did not become the Warden of IYCC until sometime in August 2001. Unlike the other defendants who are assumed to have had knowledge prior to June 2001, it is expressly alleged that Hines did not have any knowledge of Funches's and Rhyne's misconduct until receiving anonymous, written accusations on August 29, 2001. Hines, however, waited almost three weeks to investigate those accusations. Additional assaults of plaintiffs occurred after August 29, 2001, including on September 8, 2001. Whether or not this delay was reasonable is a question of fact. When an investigation was actually initiated, Funches and Rhyne were suspended four days thereafter, ending their misconduct toward plaintiffs. On the facts alleges, it must be taken as true that, if Hines had promptly ordered an investigation on August 29, at least some of the sexual assaults that occurred in September 2001 would have been prevented. Hines cannot be held liable for

assaults that occurred prior to becoming Warden. Also, the facts
alleged do not support that she was deliberately indifferent
prior to August 29, 2001. However, the claims against her will
not be dismissed because, on the facts alleged, she could be
liable for sexual assaults that occurred at some point after
August 29, 2001.

Five defendants are alleged to be IYCW administrators.
Although these five were not employed at IYCC, plaintiffs'
allegations that these five defendants knew of Funches's and
Rhyne's misconduct at IYCC must be taken as true. Plaintiffs,
however, do not allege that these defendants were directly
responsible for policies or supervision at IYCC. Plaintiffs
contend these defendants are liable because they knowingly
allowed a brothel-like environment to develop at IYCW and that
this resulted in the same type of environment occurring at IYCC
when it was opened in 1999. Since it is alleged in the SAC, the
allegation that the environment at IYCW was a causal factor in
the same type of environment developing at IYCC will be taken as
true. Still, the IYCW administrators had no direct
responsibility for IYCC, did not promulgate policies for IYCC,
and were not responsible for supervising or training IYCC
personnel. Taking as true that they knew of the substantial risk
faced by plaintiffs at IYCC, the IYCW administrators still cannot
be considered to have disregarded the harm so as to be

- 18 -

deliberately indifferent since they were not responsible for either supervising IYCC personnel or taking care of IYCC detainees. See Smith v. City of Hammond, Ind., 388 F.3d 304, 306 (7th Cir. 2004); Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998); Jones v. Brown, 300 F. Supp. 2d 674, 680 (N.D. Ind. 2003); Frane v. Kijowski, 992 F. Supp. 985, 994 (N.D. Ill. 1998). Compare Brown, 398 F.3d at 916.

Similarly, defendant Chrans and Butler had no responsibility for overseeing employees or detainees at IYCC. Chrans is the Warden at an adult correctional facility and Butler is the Warden of IYCSC. Both are alleged to have had knowledge that Funches and Rhyne were sexually assaulting detainees at IYCC. The only other allegations connecting them to IYCC is that Chrans is alleged to be one of the persons who trained IYCC Warden Hines and Butler is alleged to be one of the persons who trained IYCC Assistant Warden Kelly. The training of both allegedly failed to include training as to "the means to protect plaintiffs' constitutional rights, including the right to be free from sexual assaults." SAC ¶¶ 86-87. It is alleged that Chrans and Butler performed the actual training with others. It is, however, also alleged that Snyder, DeTella, Ahitow, and Scillia were responsible for the training. In response to the motion to dismiss, plaintiffs do not contend that Butler should be liable

based on his participation in Kelly's training.[17] See Pl. Answer
Br. at 9. In any event, it is not alleged that Butler and Chrans
were responsible for selecting the content of Hines's and Kelly's
training, only that they were responsible for providing some of
the training. Instead, it is expressly alleged that the IDOC
Administrators were responsible for the training. The facts
alleged in the complaint do not support that Butler and Chrans
had responsibilities for IYCC that they disregarded even though
they knew of sexual misconduct at IYCC. The claims against
Butler and Chrans will be dismissed.

Defendants contend that the claims should be dismissed in
part based on the statute of limitations. Defendants contend
this issue can be resolved on the motion to dismiss because
plaintiffs have alleged facts conclusively demonstrating that
claims accruing prior to September 2001 are time-barred. As
defendants correctly contend, the statute of limitations
applicable to plaintiffs' claims is two years. Williams v.
Lampe, 399 F.3d 867, 870 (7th Cir. 2005); Moore v. City of
Chicago, 2006 WL 452428 *2 (N.D. Ill. Feb. 21, 2006). Defendants
do not explain why they believe the statute of limitations should
be measured back from September 1, 2003. The original Complaint
in this action was filed on May 12, 2003, not in September 2003.

---

[17]Chrans has not been served and therefore did not
specifically join in the motion to dismiss.

The First Amended Complaint was filed on January 20, 2005 and the SAC was filed on September 20, 2005. The original Complaint named Hines, Funches, and Rhyne. It also included Does One through Twenty. The First Amended Complaint added Drew, Kelly, and Merritt and still referred to 20 Does. The SAC added 36 more defendants. Defendants do not contend that the present allegations should not relate back to the original filing on May 12, 2003.[18] The sexual assaults alleged in the SAC occurred from June through September, 2001. That entire period is within two years of May 12, 2003.

Even if defendants were to contend that there is no relation back for the defendants added in the First Amended Complaint or SAC, the facts properly before the court on the motion to dismiss would be insufficient to fully resolve statute of limitations issues. One of the plaintiffs in this case is the mother and next friend of a detainee who is still a minor, or at least still was a minor as of May 12, 2003 and apparently as of September 20, 2005 as well.[19] The other three plaintiffs bring

_____

[18]In their answer brief, plaintiffs contend their claims are timely because the original Complaint was filed in May 2003 and the sexual assaults that are the basis for their claims are alleged to have occurred in June 2001 or later. In their reply, defendants do not even mention the statute of limitations, apparently conceding that all claims relate back to the May 2003 filing of the original Complaint.

[19]Given the numerous typos and inconsistencies contained in the SAC and other apparent lack of care and attention to detail by counsel for plaintiffs, it cannot simply be assumed

- 21 -

their claims in their own names so they apparently were already 18 as of May 12, 2003. Since all the plaintiffs were in a juvenile facility in 2001, they may all have been minors when the conduct giving rise to their claims occurred.[20]

The limitation period for plaintiff's federal claims incorporates Illinois's statute of repose. Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir. 1993); Moore, 2006 WL 452428 at *2; Bolden v. Village of Bellwood, 1999 WL 438995 *1 (N.D. Ill. June 21, 1999); Doe v. Board of Education of Hononegah Community High School District No. 207, 833 F. Supp. 1366, 1375 (N.D. Ill. 1993). As to any plaintiff who was under 18 at the time she was sexually assaulted, she had until two years after she turned 18 in order to bring her claim. 735 ILCS 5/13-211; Moore, 2006 WL 452428 at *2; Campanaro v. Buhle, 1996 WL 616554 (N.D. Ill. Oct. 24, 1996); Doe, 833 F. Supp. at 1375. If the one plaintiff was still a minor as of September 2005 and, assuming proper service, all her claims would still be timely regardless of relation back. As to the other plaintiffs, assuming they were already 18 in May 2003, the claims first raised in September 2005 would not be timely absent relation back. The timeliness of new

that counsel actually considered whether the one plaintiff had already reached the age of majority as of the filing of the SAC.

[20]It is possible some of them were already 18 or older as of 2001. Illinois permits detention in a juvenile facility up to age 21. See 705 ILCS 405/5-750(3).

claims first raised in the First Amended Complaint would, absent

relation back, depend on when those plaintiffs turned 18. In any

event, the facts and arguments presently before the court are

insufficient to resolve the statute of limitations issue. No

claim will be dismissed as untimely.

Defendants also raise qualified immunity. Government

officials are protected from civil liability when performing

discretionary functions as long as "their conduct does not

violate clearly established constitutional rights of which a

reasonable person would have known." Alvarado, 267 F.3d at 652

(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

However,

> a complaint is generally not dismissed under Rule
> 12(b)(6) on qualified immunity grounds. See
> Jacobs v. City of Chicago, 215 F.3d 758, 765 n.3
> (7th Cir. 2000). Because an immunity defense
> usually depends on the facts of the case,
> dismissal at the pleading stage is inappropriate:
> "[T]he plaintiff is not required initially to
> plead factual allegations that anticipate and
> overcome a defense of qualified immunity." Id.
> As noted in Jacobs' concurrence, "Rule 12(b)(6)
> is a mismatch for immunity and almost always a
> bad ground for dismissal . . . and when
> defendants do assert immunity it is essential to
> consider facts in addition to those in the
> complaint." Id. at 775 (Easterbrook, J.,
> concurring).

Alvarado, 267 F.3d at 651-52. Accord Williams v. Cook County,

2006 WL 1806198 *4 (N.D. Ill. June 29, 2006). Having already

determined the extent to which plaintiffs have adequately alleged

a constitutional violation, it must be determined whether, as to the remaining claims, the constitutional right involved was clearly established as of Summer 2001 when the alleged sexual assaults occurred. See Kiddy-Brown v. Blagojevich, 408 F.3d 346, 353 (7th Cir. 2005) (quoting Delgado v. Jones, 282 F.3d 511, 515-16 (7th Cir. 2002), cert. denied, 543 U.S. 925 (2004)).

Prior to 2001, it was clearly established that it violated the Constitution for correctional officers to sexually assault persons held in custody. See, e.g., Walker, 129 F.3d at 413-14. It was also clearly established that sexually abusing a minor who is a ward of the state violates the Constitution. Kitzman-Kelley v. Warner, 203 F.3d 454, 458 (7th Cir. 2000). Additionally, it was clearly established that administrative and supervisory officials could be liable for failing to establish appropriate policies or training to prevent, or failing to attempt to stop, constitutional violations that they knew were being perpetrated by employees over whom they had authority. See Farmer, 511 U.S. 825; Kitzman-Kelley, 203 F.3d at 459; Steidl, 151 F.3d at 140-41. It was also clearly established that a nonsupervisory state actor may be liable for failing to take action to attempt to prevent a constitutional violation that he or she knows another state actor is perpetrating and which the first actor has a reasonable opportunity to prevent. See Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000); Yang v.

Hardin, 37 F.3d 282, 285 (7th Cir. 1994); Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972). No claim will be dismissed based on qualified immunity.

Defendants also contend the SAC should be dismissed because it violates the requirement of Fed. R. Civ. P. 8(e)(1) that "[e]ach averment of a pleading shall be simple, concise, and direct." Defendants contend this requirement cannot be satisfied because the SAC is 53 pages long[21] and contains 209 paragraphs. The length, however, primarily results from having four plaintiffs and 42 defendants. While some allegations are occasionally repeated unnecessarily, the individual averments are simple and concise. Although citing Rule 8(e), defendants appear to be complaining that plaintiffs have not satisfied Rule 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Taken together, the two rules "underscore the emphasis placed on clarity and brevity by the federal pleading rules." Wright & Miller, Federal Practice & Procedure Civil 3d § 1217 at 246 (2004). However, the fat, ambiguity, and confusion in a complaint must be particularly awful before a complaint will be dismissed for violation of Rule 8(a)(2). Bennett, 153 F.3d at 518; Wright & Miller, § 1217 at 258 & n.11. While the SAC

---

[21]The 53 pages include five plus pages of title and a signature page.

could have been organized better and some of the repetitiveness cut, it does not approach the excessiveness that would support dismissing it for violating Rule 8(a)(2) or Rule 8(e)(1). The length of the SAC mostly results from there being 42 named defendants.

For the reasons previously discussed, 12 of the defendants will be dismissed from this action. Plaintiffs may want to consider voluntarily dismissing additional defendants so as to be able to more efficiently and effectively pursue their claims.[22] In the meantime, however, there are a large number of defendants who have not been served and it is well over 120 days since all defendants were named in a complaint. At the next status hearing, all the defendants who have not been served will be dismissed from this action without prejudice unless plaintiffs show good cause for not dismissing them. See Fed. R. Civ. P. 4(m).

IT IS THEREFORE ORDERED that defendants' motion to dismiss [103] is granted in part and denied in part. The claims against defendants Glenda Blackmore, Janice Shallcross, Sherwood Harford, Wendolyn Simms, Eugene Vengone, James Chrans, Jerry Butler, f/n/u Armstrong, David Barnat, Darryl Hatfield, Donald

---

[22]Also, naming so many defendants and continuing to contend they all knew Funches and Rhyne were engaging in sexual assaults may come back to bite plaintiffs if the allegations turn out to be untrue and plaintiffs had no adequate basis for making such allegations. See generally Fed. R. Civ. P. 11.

Hicks, and Samuel Nicholson are dismissed with prejudice and those defendants are dismissed from this action. All the official capacity claims are dismissed. Within two weeks, the remaining defendants who have been served shall answer the Second Amended Complaint. At the next status hearing, defendants Anthony Scillia, Calvin Drew, Michael Fury, Daryl Clayton, Allie Cooper, Hector Delapaz, Wayne Golden, Melanie Green Jernigan, Larry Johnson, f/n/u Lucky, Tasha Sanders, Anthony Turner, and Charles Watson, all of whom have not been served, will be dismissed from this action without prejudice pursuant to Fed. R. Civ. P. 4(m) unless plaintiffs show good cause why they should not be dismissed. A status hearing will be held on September 13, 2006 at 11:00 a.m.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: AUGUST 3 , 2006